No. 58,833

MEMORIAL HOSPITAL ASSOCIATION, INC., *Appellee*, v. COLT KNUTSON, RILEY COUNTY ATTORNEY, *Defendant*, and STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, ATTORNEY GENERAL, *Appellant.*

(722 P.2d 1093)

Opinion filed July 18, 1986.

*Julene L. Miller*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, and *Jeffrey S. Southard*, deputy attorney general, were with her on the briefs for appellant.

*Sam Brownback*, of Manhattan, argued the cause and was on the brief for appellee.

*Wayne T. Stratton* and *Thomas L. Bell*, of Goodell, Stratton, Edmonds and

Palmer, of Topeka, were on the *amicus curiae* brief for the Kansas Hospital Association.

*Bradley J. Smoot*, of Petefish, Curran & Immel, of Lawrence, was on the *amicus curiae* brief for *The Manhattan Mercury*.

The judgment of the court was delivered by

LOCKETT, J.: Memorial Hospital Association, Inc., (Association) filed a declaratory judgment action to determine whether the Association was subject to the Kansas Open Meetings Act (KOMA). The district court found that the Association was not subject to the Open Meetings Act. The attorney general appeals.

The following facts were stipulated to by the parties.

Memorial Hospital Association, Inc., of Manhattan, Kansas, a not-for-profit Kansas corporation, operates Memorial Hospital. The hospital and the surrounding real property is owned by Riley County and is leased to the Association by the Board of Trustees (Trustees) of Memorial Hospital.

The Trustees, appointed by the Riley County Commission, are charged with overseeing maintenance and capital improvements of the hospital. The Trustees receive and allocate money for this purpose from a county mill levy.

From 1951 until March 1982, the Hospital was operated by the Lutheran Hospital Association under a lease with Riley County. In March of 1982, the Memorial Hospital Association was formed and succeeded in interest to the corporate structure, assets, and liabilities of the Lutheran Hospital Association. From March of 1982 until November of 1984, both the directors for the Association and the trustees for the county were the same eleven individuals, all of whom were appointed by the Riley County Commission. The Directors and the Trustees held open meetings in compliance with the Kansas Open Meetings Act.

These boards were restructured in November of 1984. The process for selecting directors of the Association was changed. The new by-laws for the Association provided that new directors would be appointed by existing directors. At the November 1984 meeting, all members of the Association board resigned as directors. At the same meeting, five members of the Board of Trustees resigned and subsequently sent letters of resignation to the County Commission. A nominating committee submitted names for all eleven positions on the Board of Directors for the Association, resulting in none of the current Association direc-

tors having been appointed by a governmental entity. Four current members of the Association's directors were originally appointed to this position by the county commission. These four individuals were re-selected and elected to the Association's Board of Directors by the internal procedures of the Association.

Currently no individual serves as both a director of the Association and as a Trustee of the hospital. The hospital Board of Trustees and the Association Board of Directors are completely separate legal entities with separate procedures. The Trustees administer the county mill levy money, and the Association operates the hospital.

The Association does not have taxing powers, eminent domain powers, or legislative powers. The Association is not subordinate to any governmental entity. The Trustees receive the mill levy money and determine how the tax funds will be used to maintain the physical plant and where the funds will be spent for capital improvements. The Association receives the money and spends the funds as directed by the Trustees.

In December 1984, the Trustees and the Association entered into a fifteen-year lease, at $1.00 per year, for the hospital building and grounds. Under the lease, the Association must provide to the Board of Trustees a quarterly report, plus a certified audit and an annual financial report.

During fiscal year 1984, the Association grossed $4,713,000 and received $228,000 in county mill levy money, an amount equal to 4.8 per cent of its total gross revenues. In fiscal year 1985, the county mill levy money equaled 5.08 per cent of the gross revenues of the Association.

The district court found that the KOMA does not apply to the Association. The attorney general appeals.

When the Association originally filed for a declaratory judgment, the Riley County Attorney was named defendant. At the discovery conference the attorney general orally requested that the district court permit him to intervene. The request was denied, but the attorney general was given permission to submit a brief *amicus curiae,* which was filed.

The attorney general first contends that as a matter of law the district court's denial of the motion to intervene was incorrect. He contends that K.S.A. 60-224(a)(2) permits intervention upon timely application where the applicant claims disposition of the

action may substantially impair or impede his ability to protect an interest and that, because K.S.A. 75-4320 authorizes both the attorney general and the county attorney to enforce the KOMA, intervention by the attorney general was required to insure proper judicial construction of the act.

Whether a motion to intervene is allowed is normally a matter of judicial discretion. Intervention depends upon the concurrence of three factors: (1) timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests. *American States Ins. Co. v. Hartford Accident & Indemnity Co.,* 218 Kan. 563, 573, 545 P.2d 399 (1976).

K.S.A. 60-224(c)(1) requires the party moving to intervene in an action to serve a motion upon the parties. The motion must state the grounds for intervention and be accompanied by a pleading setting out the claim or defense for which intervention is sought.

A motion to intervene must be properly served on a party pursuant to K.S.A. 60-205, "accompanied by a pleading setting forth the claim or defense for which intervention is sought." K.S.A. 60-224(c)(1). *Wilson & Walker v. State,* 230 Kan. 49, 630 P.2d 1102 (1981). Whether the attorney general and the county attorney had similar interests in enforcing the KOMA and, therefore, the attorney general should have been allowed to intervene as a matter of right is not a question for determination under the facts of this case. At the discovery conference, the deputy attorney general made only an oral motion to intervene. The motion was not served on the parties as required by K.S.A. 60-205. The attorney general did not follow the statutory procedure for intervention. The court did not abuse its discretion in denying the motion to intervene.

After the district court had ruled that the Association was not subject to the KOMA, the Riley County Attorney resigned his office. A new county attorney was appointed. The new county attorney determined not to appeal the district court's decision. The attorney general then filed a notice of appeal. The Association contends (1) that the attorney general has exceeded his powers by appealing and (2) that the attorney general waived any right he might have to bring the appeal when he failed to intervene in the district court.

The attorney general argues that he had a statutory duty to appeal this case once the county attorney had declined to do so. He contends that permitting the attorney general to appeal promotes judicial economy, while denying the attorney general the right to appeal would prevent review of the issue because of the principles of res judicata. He also maintains that barring the attorney general from acting would usurp his statutory powers granted by the legislature.

The Association claims that the county attorney's determination not to appeal the decision of the district court was made in the best interest of the county. If the attorney general is allowed to appeal a decision that the local official feels is correct, the county is deprived of the power to protect its special interest.

K.S.A. 75-702 provides:

"The attorney general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party, and shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any other court or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested or when the constitutionality of any law of this state is at issue and when so directed shall seek final resolution of such issue in the supreme court of the state of Kansas."

The attorney general's powers are as broad as the common law unless restricted or modified by statute. *State v. Finch,* 128 Kan. 665, 280 Pac. 910 (1929). Our scheme of government provides for a county or district attorney as a law officer for each county and the attorney general as the law officer for the entire state. *Heinz v. Shawnee County Comm'rs,* 136 Kan. 104, 12 P.2d 816 (1932). It is the attorney general who appears for the state and prosecutes and defends all actions and proceedings, civil or criminal, in which the state is interested or is a party in the supreme court. The attorney general is the chief law officer, subject only to direction of the governor and the legislature.

In *State, ex rel., v. State Highway Comm.,* 133 Kan. 357, 299 Pac. 955 (1931), this court, in discussing the relationship between the attorney general and the county attorney, again emphasized that the attorney general held a superior position to the county attorney and in case of conflict controlled the prosecution. Here, it is the Association, not the Riley County Attorney, who is expressing opposition to the attorney general's right to appeal the district court's decision.

The attorney general and the county attorney have a concurrent duty to enforce the KOMA. The attorney general is the superior of the county attorney, and whenever the state and the public interest are involved, the attorney general is a party to the action. Wherever the public interest is involved or the state is a party, the attorney general is primarily the proper counsel to appear. *State, ex rel., v. City of Kansas City,* 186 Kan. 190, 194, 350 P.2d 37 (1960). It was not necessary for the attorney general to intervene once the county attorney had undertaken to defend the action in the district court, but, because of the concurrent duty to enforce the statute and the statewide interest, once the county attorney determined not to appeal the district court's decision, the attorney general had a right to appeal.

There is a belief that the public has always had a right of access to the governmental decision-making process in the United States and the State of Kansas. However, the right of access to the decision-making process is not contained in the Constitutions of the Nation or of this State, nor was it included in statutory law until the late 19th and early 20th centuries. The Kansas Open Meetings Act was enacted in 1972. The Act declared a new state policy to ensure the existence of an informed electorate—government meetings for conducting governmental affairs and transacting governmental business must be open to the public.

The attorney general contends that the Association, as a subordinate group of a legislative or administrative body, is subject to the KOMA. The Association argues that it is neither a legislative nor an administrative body nor a subordinate group; therefore, it is not subject to the KOMA.

Here, the case was submitted to the trial court on an agreed stipulation of facts. Therefore, this court is afforded the same opportunity to consider the evidence as the trial court. In such situations, this court on appellate review has the same opportunity to examine and consider the evidence and to determine de novo what the facts establish as the district court. *Fourth Nat'l Bank & Trust Co. v. Mobil Oil Corp.,* 224 Kan. 347, Syl. ¶¶ 1, 2, 582 P.2d 236 (1978). Whether the Association is subject to the requirements of the KOMA is a question of law, not fact. When determining a question of law, this court is not bound by the decision of the district court.

K.S.A. 1985 Supp. 75-4318(a) provides in part:

"[A]ll meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds shall be open to the public . . . ."

K.S.A. 75-4320a(b) states: "In any action hereunder, the burden of proof shall be on the public body or agency to sustain its action." First, it must be determined whether the Association was a public body or agency under the KOMA. If the Association is a public body or agency, it must show why it is not subject to the open meetings requirement of the KOMA.

The KOMA is remedial in nature and therefore subject to broad construction in order to carry out the stated legislative intent. K.S.A. 75-4317(a) states that "In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public."

In *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 535, 646 P.2d 1091 (1982), this court said that to determine whether an entity was subject to the KOMA, it must meet the following test:

" 'First the group of people meeting together must be a "body or agency" within the meaning of the Act. Second, the group must have legislative or administrative powers or at least be legislative or administrative in its method of conduct. Third, the body must be part of a governmental entity at the state or local level, whether it is the governing body or some subordinate group. Fourth, it must receive or expend public funds or be a subordinate group of a body subject to the Act. Finally, it must be supported in whole or in part by public funds or be a subordinate group of a body which is so financed.' "

The parties stipulated in the facts and the trial court found that even though the Association received public funds for maintenance and capital improvements, the Association was not a legislative body. The question is whether the Association, by receiving public funds which must be spent as directed by the Trustees, is an administrative body or a subordinate group of an administrative body subject to the KOMA.

The district court found: (1) the fact that four of the Association's directors were formerly board members appointed by the county commission did not give the county an element of control over the Association, and the by-laws of the Association provided

a method of selection of its members that was free from control by the county commission; (2) that the lease agreement between the Association and the Trustees created the ordinary landlord/tenant relationship; (3) if a county commission chose to provide hospital services, the legislature provided several methods by which it could operate the hospital; and (4) that under K.S.A. 1985 Supp. 19-4611 this method of operating a hospital is excluded by the legislature from the requirements of the KOMA.

The attorney general contends that the Association is a subordinate body of the county commission because (1) some members of the Association's board were originally appointed by the county commission to the previous "joint" board; (2) the lease agreement between the Trustees and the Association provides a means of "control" by the county over the Association; (3) the Association, in managing the hospital, is providing services which, but for the Association, the county would otherwise provide; and (4) the Association was created merely to avoid the application of the KOMA.

The Association argues that it is not a subordinate group because (1) it is not subject to the authority of any governmental entity; (2) neither the county commission nor the Trustees have authority to take action which would affect the Association, except the money provided from the mill levy to the Association by the Trustees must be spent for maintenance and capital improvements as they direct; and (3) the Trustees have leased the physical plant to the Association and have no authority to take any action beyond the provisions of the landlord/tenant agreement.

Both parties cite a number of cases from other jurisdictions which they argue support their positions. For an in-depth discussion, see Annot., 38 A.L.R.3d 1070. Because the statutes creating open meetings acts usually contain requirements of liberal construction in favor of open meetings, the majority of courts have found that the various types of agencies or bodies have been subject to their open meetings acts. Whenever a body or group has in any way derived the authority for its existence from a legislative or administrative agency, that body or group so created is also subject to the open meetings act. Where courts have found that the agencies or bodies were not subject to the

various acts, they have looked at form and not considered how the entity came into existence or, in some instances, its purpose.

Courts have found two types of entities, whatever form they may take, which are not subject to the open meetings laws: (1) those which are merely advisory and have no decision-making authority, and (2) those which are basically independent entities which have some connection, by contract or other tie to a government entity, but are not actually created by some form of government action.

Where it can be shown that a public body has intentionally, and for the purpose of avoiding the light of public scrutiny, appointed a board of non-elected citizens to determine for the elected board what course should be pursued, or where the actions of the private citizens are in any way binding upon the elected officials, the meetings of such groups should be open to public scrutiny. Public bodies cannot be allowed to do indirectly what the legislature has forbidden.

*Palmgren*, 231 Kan. 524, held that the Board of Trustees of a hospital (similar to the combined boards of the Trustees and the Association which ran the hospital from March 1982 until November 1984) was a subordinate group of the county commission and was subject to the KOMA. The district court determined under the facts presented that the legislature, by enacting K.S.A. 1985 Supp. 19-4611 in 1984, intended where the board of trustees leases the hospital property to another entity, the lessee of the hospital property would not be subject to the KOMA. We agree.

In 1984 the legislature enacted Article 46 of Chapter 19 of the Kansas Statutes. K.S.A. 1985 Supp. 19-4601 *et seq.* provides that a county may establish and maintain a county hospital. Two statutory methods of operating the hospital are provided by the legislature.

K.S.A. 1985 Supp. 19-4605 allows the county commission to establish a board appointed by the commission or elected by the qualified voters of the county on a nonpartisan basis to operate the hospital: The commission or the board may levy an annual tax to operate, maintain, equip, and improve the hospital. K.S.A. 1985 Supp. 19-4612. The board submits its budget for approval to the commission. The board is required to meet each month and maintain a complete record of all its proceedings. The records

are available for the commission to inspect. K.S.A. 1985 Supp. 19-4607. Members of the board may be allowed compensation in an amount determined by the commission. K.S.A. 1985 Supp. 19-4609.

K.S.A. 1985 Supp. 19-4611 allows the board to enter into a written lease of the county hospital property. The lease may contain such terms and conditions that the board deems necessary to insure that hospital services are provided. Under 19-4611, the lessee of the hospital is not granted statutory power to levy tax for the operation of the hospital and is not required to hold meetings or maintain and submit records to the board. Nor does 19-4611 provide for the commission to set the compensation of the board members.

The Association, in this case, is not advisory to either the county commission or the Trustees. The Association has no authority to make decisions which involve a community resource. Limited public funds are spent for maintenance and capital improvements only as determined by the Trustees, an administrative body subject to the KOMA. The Association was not created as an alter ego to the county commission or the Trustees to carry out certain duties for which the commission or the Trustees were responsible. The Association was not created to evade the open meetings law. The 1984 legislature intended, where the county commission provides for the management and control of a county hospital by a board under 19-4605, that such board be subject to the KOMA. Where the board under 19-4611 leases the hospital property to another, the lessee is not subject to the open meetings requirement of the KOMA if the lessee: (1) has no governmental decision-making authority to expend public funds, and (2) is an independent entity which by contract agrees to provide hospital services under a lease of hospital property from a board of trustees.

The judgment is affirmed.