The Honorable Sue Storm State Representative, 2nd District 8145 Mackey Overland Park, Kansas 66204
Dear Representative Storm:
You ask whether the Prairie Village Development Corporation (PVDC) is subject to the Kansas Open Meetings Act (KOMA), K.S.A. 75-4317et seq.
The PVDC is an Internal Revenue Code Section 501(c)(3) not-for-profit corporation. Its purpose, as stated in its articles of incorporation, is as follows:
 "(1) To foster the economic, residential and commercial growth, development and redevelopment within the present and future geographical boundary of the City of Prairie Village, Kansas; and
 "(2) To purchase, develop, manage, and lease, sell or otherwise dispose of real estate, buildings and other forms of residential and commercial improvements of any kind and other associated property of whatever kind or description suitable to the above-stated purposes."
According to the information we have, a committee was initially created by the mayor of the City of Prairie Village (City). That committee eventually became the PVDC. It was not, however, created by any formal action of the City or any other governmental entity. The actual incorporator was not affiliated with the City. The initial board of directors were four residents of the Kansas City Metropolitan Area, three members of the City Council, with the mayor as an ex officio director. Currently, the amended bylaws provide for seven directors which may be increased to nine. Three of the directors are to be City Council members. All new directors, including those who are City Council members, are selected by existing directors. The mayor continues as an ex-officio director.
The bylaws also provide, in Article II, Section I, that the City is a perpetual member of the corporation, but with no voting rights. There may be other associate members, but to date none have been appointed. The bylaws provide for meetings of members. The City's rights as a member are limited to a review of PVDC's books and records.
To date, the PVDC has been entirely funded by the City. It received $15,000 in 1997, $2,000 in 1998, and $4,000 through July of 1999. The money is used for operating expenses such as meeting rooms, professional fees, filing fees, and consulting fees. The PVDC never has had employees, and the directors are not paid a salary. If PVDC were ever dissolved, all money and property would go to the City.
City staff have contributed time to the PVDC, described as voluntary. PVDC has no owned or leased offices. The City administrator was the secretary of the PVDC and at one point designated himself as resident agent with the mailing address as City Hall, although this was later changed. Although the PVDC has met almost once a month since its inception, only one Board meeting was held on City property, and that was in a room available for use by the general public.
PVDC has provided recommendations on redevelopment policies to the City. At least initially, the PVDC stated that it would ask the City from time to time to condemn certain properties or create tax increment financing districts.
K.S.A. 75-4318(a) sets forth a two part test for groups covered by the KOMA, both elements of which must be met. The KOMA provides:
 "all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds shall be open to the public. . . ."
We note that the KOMA's application appears to be narrower than application of the Kansas Open Records Act (KORA). The KORA implies that, subject to certain exceptions, any entity which is appropriated public funds may be covered by KORA since the KORA defines a public agency as:
 "[T]he state or any political or taxing subdivision of the state or any office, officer, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state."[1]
That the PVDC receives public funds is not enough, in and of itself, to bring it within the KOMA's coverage. Moreover, the PVDC, as a not-for-profit corporation, cannot be described as a legislative and administrative body or agency of the state or any political or taxing subdivision thereof; for it to fall under the KOMA, it would have to be a subordinate group of one of these entities.
In Memorial Hospital Ass'n v. Knutson,[2] the Court considered whether a private, not-for-profit corporation which administered a county hospital was covered by the KOMA. The hospital building was owned by the county and had originally been run by a board of trustees who were county appointees, through a not-for-profit corporation (the Hospital Association) made up of the trustees. The trustees then restructured the not-for-profit so that none of the directors of the not-for-profit were county appointed trustees. The trustees received the mill levy and determined how it would be used on maintenance and capital improvements. The Association then received this money and spent it as directed. The hospital building was leased to the Association for $1.00 per year.
In finding that the KOMA did not apply to the Association, the Court first quoted with approval from Murray v. Palmgren,[3]
on the test for whether an entity is subject to the KOMA:
 "First the group of people meeting together must be a `body or agency' within the meaning of the Act. Second, the group must have legislative or administrative powers or at least be legislative or administrative in its method of conduct. Third, the body must be part of a governmental entity at the state or local level, whether it is the governing body or some subordinate group. Fourth, it must receive or expend public funds or be a subordinate group of a body subject to the Act. Finally, it must be supported in whole or in part by public funds or be a subordinate group of a body which is so financed."
The Court explained that there are two types of entities to which the KOMA does not normally apply:
 "(1) those which are merely advisory and have no decision-making authority, and (2) those which are basically independent entities which have some connection, by contract or other tie to a government entity, but are not actually created by some form of government action."[4]
The Court added, however, that in some cases, some of these two groups are subject to the KOMA:
 "Where it can be shown that a public body has intentionally, and for the purpose of avoiding the light of public scrutiny, appointed a board of non-elected citizens to determine for the elected board what course should be pursued, or where the actions of the private citizens are in any way binding upon the elected officials, the meetings of such groups should be open to public scrutiny. Public bodies cannot be allowed to do indirectly what the legislature has forbidden."[5]
The Court finally concluded:
 "The Association, in this case, is not advisory to either the county commission or the Trustees. The Association has no authority to make decisions which involve a community resource. Limited public funds are spent for maintenance and capital improvements only as determined by the Trustees, an administrative body subject to the KOMA. The Association was not created as an alter ego to the county commission or the Trustees to carry out certain duties for which the commission or the Trustees were responsible. The Association was not created to evade the open meetings law."[6]
In essence, the Court held that the reorganization of the Association went far enough to separate it from the authority of the county and that the Association was not delegated legislative or administrative authority.
This office has discussed the KOMA's application to private not-for-profit corporations in a series of opinions. One opinion concluded that the KOMA did not apply to a not-for-profit corporation known as the Association for K-10 Corridor Development, Inc.[7] Its purpose was "the well-planned development of land along and near Kansas Highway 10 between the cities of Overland Park and Lawrence." There were 21 directors, including mayors of several cities, as well as other city and county officials, plus 13 representatives of local businesses.
This office concluded it does not meet the first part of the test for application of the KOMA, saying:
 "The association here in question is not created by the legislature, nor by the resolution or ordinance of any cities or counties. We find no federal or state law specifying governmental responsibility for planning development along K-10. Although some city and county officials are also directors of the association, the board is not controlled by those local governmental entities. The appointment of directors does not require nomination or confirmation by any government body. Furthermore, the association does not seem to be a subordinate body to any particular city or county or group of cities or counties. We do not have sufficient evidence to conclude that the cities and counties who are members of the association exercise considerable control and influence over the activities of the association. We therefore conclude that the association does not meet the first prong of the test to be subject to the KOMA."
The opinions that have concluded that certain private corporations are subject to the KOMA generally turn on the fact that they were created by formal resolution of a governmental board or were performing a function that was traditionally a governmental function.[8] For instance, in one pre-Knutson opinion this office considered the Economic Development Foundation, Inc., which was created by a joint resolution of the Kansas City, Kansas, City Commission and the Wyandotte County Commission.[9] The opinion took note of the fact that the organization was providing services under the Economic Opportunity Act of 1964, which at the time provided that such organizations were deemed to be state or local agencies. The opinion also relied on the fact that the corporation was created by joint resolution and that the commissions continued to appoint one-third of the corporation's board.
The mere fact that a corporation is initially created by governmental action, alone, would not seem to be enough underKnutson because the not-for-profit in that case was originally made up entirely of members of the public Board of Trustees. The real message of Knutson is the KOMA may apply to a not-for-profit when the not-for-profit is performing a governmental function and is serving as an alter ego of the board that created it.
In a post-Knutson opinion, this office opined that a not-for-profit corporation that provided mental health services specifically for one county was subject to the KOMA.[10] That opinion turned on the fact that the function it was performing was traditionally a governmental function. In fact, statutes specifically contemplate that counties will provide mental health services.[11]
Cases from other jurisdictions concerning not-for-profit corporations are of minimal value because they tend to turn on the particular wording of the states' statutes. However, in RockfordNewspapers v. Northern Ill. Council,[12] the Illinois Court of Appeals considered a not-for-profit which administered a number of drug and alcohol treatment programs in two counties. The relevant open meetings statute was very similar to Kansas' in that it covered:
 "All meetings of any legislative, executive, administrative or advisory bodies of the State, counties, townships, cities, villages incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue. . . ."[13]
The court first noted that the percentage of public funding alone does not create a "subsidiary body." The court held that because the not-for-profit had a formal independent legal nature, and its board and employees were truly independent from governmental control, and because it's relationship with the counties was contractual in nature, the open meetings act did not apply.
In Hopf v. Topcorp, Inc.,[14] the Illinois Court of Appeals considered this same statute's application to two for-profit corporations. The corporations were created as the result of a statement of understanding between the City of Evanston and Northwestern University for the purpose of developing a research park. The corporations were actually owned by the University and City and operating expenses were from public funds. One corporation was to purchase land and act as a holding company while the other was to market the land. The court said that under the test set forth in Rockford, the question was whether the corporations were subsidiary bodies of the City.
The court said that while the City and University were able to influence the corporations through appointment power, neither could control them and held that under the facts, the City did not exert sufficient control over the corporations to render them subsidiary bodies of the City.
Rockford and Hopf stand for an even more narrow interpretation of Illinois' statute than Knutson does of Kansas'. They do show, however, that there is reluctance to apply open meetings acts worded this way to a private corporation when the government does not have same degree of control over the corporation. While it is clear that the PVDC was created with something more than just the approval of the City of Prairie Village, the City did not actually create it and does not control it through appointment power. While it is clear that the PVDC is performing a function in which the City is interested, it is not solely a governmental function. And while it is clear the PVDC makes recommendations to the City, the City is free to ignore these recommendations. While the PVDC did decide how to spend the money it received, it did so only in the context of paying operating expenses. The PVDC was not appropriating large sums of money to others or buying and developing property with it on behalf of the City; the City has not done an "end run" around the KOMA and allowed the PVDC to spend large sums on actual development and property rehabilitation. The fact that funding is solely governmental is not controlling for purposes of the KOMA since the test is a two part test.
Based upon the information that we have been provided, and in light of Knutson, we do not believe that the City currently exercises an adequate degree of control over the PVDC to bring it with in KOMA's mandate. Likewise, we do not believe that to date the PVDC has handled public funds in a manner that would cause us to believe they are an alter ego of the City. Whether the KOMAshould apply to the PVDC is a question for the Legislature. We are only able to say given current statutes as interpreted by the Kansas Supreme Court, we do not believe that it does.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] K.S.A. 1998 Supp. 45-217 (emphasis added.)
[2] 239 Kan. 663 (1986).
[3] 239 Kan. at 669, quoting, 231 Kan. 524, 535 (1982),quoting Smoot and Clothier, Open Meetings Profile: The Prosecutor's View, 20 Wn.burn L.J. 241. 256-57 (1981).
[4] Id. at 671.
[5] 239 Kan. at 671.
[6] 239 Kan. at 672.
[7] Attorney General Opinion No. 94-42.
[8] See, e.g., Attorney General Opinions No. 80-210, 84-10, 87-27, 87-143, 87-188, 88-25.
[9] Attorney General Opinion No. 84-10.
[10] Attorney General Opinion No. 87-188.
[11] See, e.g., K.S.A. 65-211 et seq.
[12] 380 N.E.2d 1192 (Ill.App. 1978).
[13] 380 N.E.2d at 1193, quoting Ill. Rev. Stat. ch. 102, ¶ 42.
[14] 628 N.E.2d 311 (Ill. 1993).