No. 115,932

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GREAT PLAINS OF KIOWA COUNTY, INC.,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Kansas Open Records Act, K.S.A. 45-215 *et seq.*, is analyzed and applied.

2.

The public policy of the state is that public records shall be open for inspection by any person unless otherwise provided by the Kansas Open Records Act.

3.

"Public record" means any recorded information, regardless of form or characteristics, which is made, maintained, or kept by or is in the possession of any public agency.

4.

The term "public agency" is defined in the Kansas Open Records Act as the state, any political or taxing subdivision of the state, or an office, officer, agency, or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by public funds appropriated by the state or by public fund of any political or taxing subdivision of the state.

1

5.

A public agency under the Kansas Open Records Act does not include any entity solely by reason of payments from public funds for property, goods, or services of such entity.

Appeal from Kiowa District Court; VAN Z. HAMPTON, judge. Opinion filed February 10, 2017. Affirmed and remanded with directions.

*Alan L. Rupe*, of Lewis Brisbois Bisgaard & Smith LLP, of Wichita, for appellant.

*J. Scott James*, county attorney, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

PIERRON, J.:  Great Plains of Kiowa County, Inc. (GPKC) appeals from the district court ruling that the requested financial records from its operations running the Kiowa County Memorial Hospital (Hospital) were public records under the Kansas Open Records Act (KORA) and fining GPKC for failing to turn over the records on the request of the Kiowa County Commission (County).

In January 2001, GPKC signed a lease agreement with the Board of Trustees of the Hospital (Board). GPKC is a not-for-profit corporation, organized solely for the purposes of administering the Hospital located in Greensburg. GPKC was licensed to carry out hospital operations. It was and it remains a licensed health care provider. GPKC is a subsidiary of Great Plains Health Alliance, Inc., another not-for-profit corporation. The two entities' officers and directors are identical.

The lease between the Board and GPKC, commencing in January 2001, leased the hospital building, grounds, and equipment to GPKC and required GPKC to assume and continue the hospital's operations and provide quality nonprofit health-care services to the

area's residents. Under the lease, if GPKC determined that tax support was necessary to sustain the hospital's operations, it would advise the Board. The Board would then request an ad valorem tax be levied on property in the county. The proceeds of such tax levies would be held by the Board to pay insurance premiums on the hospital buildings and its contents and to fund a depreciation account for equipment replacement, with the balance of any monies made available to GPKC from time to time as necessary to maintain cash flow for the hospital's operation. The lease was amended three times on subjects unrelated to this appeal.

It is undisputed that the Board levied a tax on county property owners for the years 2012-2014. Money originating from that tax levy was provided to GPKC under the terms of the lease, and those funds were used to support hospital operations. From year to year, GPKC informed the Board in advance of the amount of tax funds GPKC determined would be necessary to support the hospital for the next year's operations. It appears the information provided by GPKC was only a summary of prior and current bottom-line figures in order to determine the amount of tax levy needed. After receiving this information, the Board would determine the appropriate tax levies to seek through the County. GPKC obtained over $500,000 from the levies in 2012, $950,000 in 2013, and requested or received $1,042,200 for 2014. For the fiscal years 2011 to 2013, the percentage of financial support GPKC received for hospital operations from the tax levies increased from 14%, 16%, and then 20% in 2013. The balance of its funding comes from federal grants through the Kansas Department of Health and Environment (KDHE) and patient payments.

In October 2014, the County served a request for information on GPKC. The request cited KORA, K.S.A. 45-215 *et seq.*, and sought documents containing information about the hospital's budget as well as vouchers for payments for professional fees and management fees. The County also requested information regarding the salaries and titles of all administrative or executive employees of GPKC, excluding any

3

personally identifiable information. Finally, the County sought the registrations for any vehicles operated, whether owned or leased, by the hospital or GPKC.

GPKC responded to the County's request by denying that it was a public agency subject to KORA. Instead, GPKC stated it was merely a lessee of the Hospital. GPKC suggested that the County seek information it wanted from the Board. The County then advised GPKC that it had already contacted the Board and was advised the Board did not possess that information.

On October 20, 2014, the County filed a petition in district court seeking to enforce KORA and named GPKC as the defendant. GPKC filed an answer denying it was a public agency subject to KORA and its records were not public records within the meaning of KORA. The County issued requests for admissions and for interrogatories to GPKC. The parties attempted to reach a stipulation of facts but were unable to do so.

On November 10, 2015, the County filed a motion for summary judgment and a memorandum in support. After an extension of time, GPKC filed its response in mid-December. GPKC controverted some of the County's statement of facts, but the facts set forth above were essentially uncontroverted. GPKC's arguments before the district court mirror the arguments raised on appeal.

On January 4, 2016, the County's motion for summary judgement was scheduled for a hearing on February 10, 2016. Fourteen days before the hearing, GPKC filed its own motion for summary judgment with a list of nine statements of uncontroverted facts.

At the hearing, the County noted that GPKC had recently filed a motion for summary judgment and did not give a hearing date for that motion. Although the County's 21-day response time to the motion had not expired, it advised the district court that GPKC's motion made no new legal arguments and were essentially the same

4

argument GPKC made in its response to the County's motion. The County stated it did not object to considering GPKC's motion at that hearing. The court heard the various arguments made by the parties, including GPKC's arguments that the bulk of its funding comes from federally funded grants through KDHE. GPKC argued since it was largely funded by federal monies, it was not a public entity under KORA. Ruling from the bench, the court found that county mill levy funds were used by GPKC and that K.S.A. 2015 Supp. 47-217(f)(1) only applied to vendors, and because GPKC provided services to the citizens of the county rather than directly to the county, GPKC was subject to KORA.

Following a conference under Supreme Court Rule 170 (2015 Kan. Ct. R. Annot. 264), the district court issued its journal entry entering judgment in favor of the County. The court specifically found that because the County provided public funds to GPKC through mill tax levy funds, GPKC was a public agency under K.S.A. 2015 Supp. 45-217(f)(1). The court further concluded that the exemption in K.S.A. 2015 Supp. 45-217(f)(2) did not apply to GPKC as it was intended to apply only to vendors and not entities providing on-going services to the public. The court concluded that when the services were provided directly to the public rather than directly to the County, the records relating to those services were subject to KORA. Accordingly, the court found that GPKC was in violation of KORA by failing to provide the records requested by the County.

Consequently, the district court ordered GPKC to turn over the requested records within 30 days of its order, absent an appeal. The court also fined GPKC $500 for its violation of KORA. Finally, the court stayed its order if GPKC timely appealed the ruling and set an appeal bond of $500. GPKC timely appeals.

*Standard of Review*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015).

*Statutory Authority for County Hospitals*

Under K.S.A. 19-4603, the county commission of any county may, under appropriate circumstances, establish and maintain a hospital by issuing general obligation bonds to construct, purchase, lease, or otherwise acquire a site, building(s), and equipment for a hospital. In such a situation, the county must create a board of trustees to oversee the management and control of the hospital. K.S.A. 19-4605(a), (c). All monies obtained, other than proceeds from the issuance of revenue bonds, are deemed to be public money, and funds not immediately required for hospital purposes may be invested. The board is obligated to keep and maintain complete financial records in a form consistent with generally accepted accounting principles, and such records "shall be available for public inspection at any reasonable time." K.S.A. 2015 Supp. 19-4608(e). The board may, however, transfer any monies or properties to a qualifying Kansas not-for-profit corporation. K.S.A. 2015 Supp. 19-4608(f).

The hospital board is authorized to lease any hospital property, including real and personal property, under a written contract to any person or associations the board deems necessary. K.S.A. 19-4611(a)-(c). It may also contract for the management of any hospital with any person or corporation. K.S.A. 19-4611(d). Even if the board enters into a contract for the management and control of the hospital by another party, the board still has the authority to levy taxes for the benefit of the hospital. K.S.A. 19-4612.

6

*The Kansas Open Records Act*

KORA, in its current form, was adopted by the Kansas Legislature in 1984. L. 1984, ch. 187. Although KORA has been amended several times since 1984, those amendments are not relevant to the issues in this appeal. Under the statute, there are several key provisions that must be considered. The first provision is K.S.A. 45-216(a), which declares that it is "the public policy of the state that *public records* shall be open for inspection by any person unless otherwise provided by this act." (Emphasis added.) That provision continues by stating that KORA "shall be liberally construed and applied *to promote such policy.*" (Emphasis added.) K.S.A. 45-216(a).

In turn, the phrase "public record" is specifically defined by KORA. That definition states, in relevant part:  "'Public record' means any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any *public agency* . . . ." (Emphasis added.) K.S.A. 2015 Supp. 45-217(g)(1). The phrase specifically "shall not include records which are owned by a private person or entity *and* are not related to functions, activities, programs or operations funded by public funds . . . ." (Emphasis added.) K.S.A. 2015 Supp. 45-217(g)(2).

The primary focus of the parties' arguments turn on the definition of "public agency" as specified in K.S.A. 2015 Supp. 45-217(g)(1). As relevant to this case, the term "public agency" is defined in KORA as the state, any political or taxing subdivision of the state, "or any office, officer, agency or instrumentality thereof, or any other entity receiving or expending and supported *in whole or in part* by public funds appropriated by the state or by public funds of any political or taxing subdivision of the state." (Emphasis added.) K.S.A. 2015 Supp. 45-217(f)(1). The legislature, however, specifically provided that a public agency under KORA did not include "[a]ny entity *solely* by reason of payment from public funds for property, goods or services of such entity." (Emphasis added.) K.S.A. 2015 Supp. 45-217(f)(2)(A).

7

*Analysis*

The County argues KORA applies because GPKC received funds from county tax levies and was more than a mere vendor. It actually operated the hospital the County was authorized to purchase and the Board was authorized to operate. Because the Board had entered into a lease permitting GPKC to operate the hospital, it was more than a mere vendor, and the policy of KORA demands that its records be open.

In response, GPKC argues that it falls under the K.S.A. 2015 Supp. 45-217(f)(2) exception as it only provides goods and services to the Board. In addition, it asserts that since the largest part of its funding comes from federal grants and since the funds it receives from the County are only a small portion of its budget, it is not a public entity and not obligated under KORA to disclose its records.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 304 Kan. at 409. When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013).

Reading the KORA definitions in pari materia reflects a legislative intent for KORA to have broad reach. First, the legislature specifically provided that KORA should be "liberally construed and applied" to promote the policy that "public records" be opened for public review. K.S.A. 45-216. Taking the next step, the court must recognize that the definition of "public record" excludes only records owned by private entities *if* they "are not related" to operations funded by public funds; the use of the term "and" in K.S.A. 2015 Supp. 45-217(g)(2) requires *both* that the records be privately owned *and* that the records be unrelated to activities funded by public funds in order for the entity's records to be excluded from the term "public record."

The parties principally focus on the definition of "public agency" in arguing about the applicability of KORA in this case. This argument may be misguided. The focus on KORA is "public records" regardless of who has custody of the public records. Granted, records are required to be open for inspection at facilities made available by each public agency. K.S.A. 45-218. If the request is directed to a person who is not the custodian of the *public record*, that person must provide the name and location of the custodian of the public record. K.S.A. 45-218(c). While the official custodian is an officer or employee of a public agency, the custodian is responsible for the maintenance of the public records, "regardless of whether such records are in the officer or employee's actual personal custody and control." K.S.A. 2015 Supp. 45-217(e).

By statute, the Board was obligated to maintain records of its operations in a manner required by generally accepted accounting principles. K.S.A. 2015 Supp. 19-4608(e). In turn, the Board's lease with GPKC obligated it to maintain its records according to generally accepted accounting principles.

Regrettably, nothing in the lease specifically required GPKC to provide its operating records to the Board. Thus, it seems clear that if the Board had carried out its statutory obligations, the County could have easily obtained those records from the

9

Board. Notwithstanding the fact that the Board failed to maintain the hospital operating records itself, the statute seems to still make the records "public records," although those records are within the custody and control of a private person.

In other words, the focus of KORA seems to be on the nature of the records, *i.e.*, are they "public records," rather than on the nature of the entity with the custody of the records.

Unfortunately, there is little legislative history on KORA concerning the key portions of the Act. KORA's passage through the legislature in 1984 was swift. KORA was introduced and passed by the House on January 13, 1984, reviewed and passed by the Senate on January 18, 1984, and signed by the Governor on February 2, 1984. The framework of the current statute, however, was created by the Special Committee of Federal and State Affairs in an interim report provided to the 1980 legislature. See Report on Kansas Legislative Interim Studies, Proposal No. 16, at 264-78 (December 1979). It was originally presented as HB 2731 to the 1980 legislature but was not formally adopted by the legislature (as HB 2668) until 1984. L. 1984, ch. 187. Much of the delay was attributable to issues relating to attempts to make records identifying physicians who performed public-funded abortions available. See Frederickson, *Letting the Sunshine in: An Analysis of the 1984 Kansas Open Records Act,* 33 Kan. L. Rev. 205, 210 (1985).

The County relies on Frederickson's article and its suggestion that the exception created in K.S.A. 2015 Supp. 45-217(f)(2) was intended to be limited to vendors who provided supplies or services directly to the public agency. Although GPKC challenges the post-enactment statements of legislators regarding the meaning of "public entity" and the K.S.A. 2015 Supp. 45-417(f)(2) exception, the record reflects that at least some of these legislators were on the key committees that worked on the bill over several years while it was being drafted and revised. Moreover, Representative Neal Whitaker, who was cited several times, was the chair of the interim committee that proposed and drafted

10

the first version of what ultimately became the Kansas Open Meeting Act (KOMA). Interim Report, at 279.

The Interim Report noted the confusion relating to open records in the preexisting statutes—K.S.A. 45-201 *et seq.*—and the fact that the prior act was unduly restrictive. Interim Report, at 264-65. The interim committee found the pre-KORA law was unworkable and suggested revisions based upon statutes in Colorado and Kentucky. Interim Report, at 267. One of the goals of the proposed KORA legislation was to clearly define which records would be treated as public records and to enhance the public's accessibility to those records and still protect the privacy of individual citizens and public employees. Interim Report, at 267. It then provided a broad synopsis of some of the more important provisions of the proposed KORA. Interim Report, at 269-78.

Most if not all states have some type of open records act. Some are labeled as "Open Records Acts" others as "Public Records Acts" and still others as "Right to Know Laws." As indicated in the Interim Report, Colorado's Open Records Act (CORA) appears to mirror KORA more closely. See Colo. Rev. Stat. § 24-72-200.1 *et seq.* Under Colorado law, CORA set forth a broad, general policy and exceptions to that policy were to be narrowly construed. *City of Westminster v. Dogan Const. Co., Inc.*, 930 P.2d 585, 589 (Colo. 1997) (Information regarding interviews with references contacted about various contractors bidding on public works project were not subject to CORA as they clearly fell within its narrowly construed exceptions.). Significantly, Colorado courts have held that there were a number of factors in determining whether the entity was subject to CORA, including the purpose for which the entity was formed, whether the entity had availed itself of the public entity's resources and facilities, and whether the entity could levy a tax. *Denver Post Corp. v. Stapleton Dev. Corp.*, 19 P.3d 36, 39 (Colo. App. 2000). These factors examined the level of the public agency's involvement with the private entity and included: (1) the level of public funding; (2) whether there had been a commingling of funds; (3) whether the activity was conducted on publicly owned

11

property; (4) whether services contracted for were an integral part of the public agency's chosen decision-making process; (5) whether the private entity was performing a governmental function or a function which the public agency otherwise would perform; (6) the extent of the public agency's involvement with, regulation of, or control over the private entity; (7) whether the private entity was created by the public agency; (8) whether the public agency has a substantial financial interest in the private entity; and (9) for whose benefit the private entity was functioning. *Denver Post Corp.*, 19 P.3d at 40. See also *Sarasota Herald-Tribune Co. v. Community Health Corp., Inc.,* 582 So. 2d 730, 734 (Fla. Dist. App. 1991) (not-for-profit corporation expressly created to perform various important functions previously performed by public hospital is subject to Florida's Public Records Act).

Weighing the factors cited in *Denver Post Corp.*, the analysis leans toward finding the financial records of GPKC requested are public records. The Board did not create GPKC and its control is limited to the terms of the lease. All the Board funds are ultimately disbursed to GPKC. The most recent estimates indicated the Board's financial support had increased over recent years and currently amounted to approximately 20% of GPKC's funding. In addition, GPKC conducted its activity in a publicly owned hospital based upon the County's determination that it was important to provide a hospital and related services to its citizens.

GPKC relies on the Kansas Supreme Court decision of *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 722 P.2d 1093 (1986), a case involving KOMA, K.S.A. 75-4317 *et seq. Knutson* is not persuasive because it relied on statutory provisions requiring open meetings for the transaction of business by all legislative and administrative bodies and political and taxing subdivisions thereof. In that case, the county attorney and attorney general argued that the not-for-profit agency operating the county hospital was a "subordinate group" of such a governmental entity. 239 Kan. at 670. The *Knutson* court held that because the lessee of the hospital was not granted

statutory power to levy taxes, it was not subject to KOMA because it exercised no governmental decision-making authority to expend public funds and was an independent entity and not the alter ego for the commission or the board. 239 Kan. at 672.

However, the focus of KOMA is to ensure that meetings are open to the public where government decisions are being made. KOMA was adopted in 1972. The original open records statutes, K.S.A. 45-201 *et seq.*, were adopted in 1957. See L. 1957, ch. 455, § 1. KORA was adopted in 1984, well after the adoption of KOMA. While both acts involve improving transparency in government operations, there is no indication in any of the caselaw cited by GPKC that KORA and KOMA must be construed in pari materia.

Again, KOMA involves ensuring government decisions are made in open meetings. KORA is focused on the availability of public records, with some exceptions for specified types of records. KORA's focus is not on who serves as the actual custodian of the public records; it is simply to ensure that records relating to the use of governmental funds are open.

Even assuming KORA only applies to "public entities" the term is clearly ambiguous in light of the inconsistent opinions from the Kansas Attorney General's Office interpreting its application to different quasi-public entities. The question as to the public entity exception is why the legislature used the term "solely" in K.S.A. 2015 Supp. 45-217. A public agency does not include "[a]ny entity *solely* by reason of payment from public funds for property, goods or services of such entity." (Emphasis added.) K.S.A. 2015 Supp. 45-217(f)(2)(A). While GPKC leases property and provides services, it essentially operates the hospital that the County determined was needed in the community. The County chose to provide what normally would not be a typical governmental function—medical services of a hospital to its community. Narrowly construing the exceptions, financial records that the Board required GPKC to maintain as

13

to its operating expenses more sensibly falls within the definition of public record under KORA.

Under their open records laws, other states have rejected the common-law distinction between governmental and proprietary functions used to address sovereign immunity or other concepts. In such context, a common-law distinction between "governmental" and "proprietary" functions has been employed to distinguish ordinary contracts from those particular agreements which are so intertwined with policymaking they cannot be made to bind succeeding government decision makers. *SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 661-62, 45 A.3d 1029 (2012) (governmental/proprietary distinction applied to contracts that may be binding on succeeding government decision makers does not apply to open records act). All the cases cited by GPKC about the governmental/proprietary distinction involve governmental immunity issues, not KOMA or KORA.

With increased privatization of what were once government operated programs, courts have been inclined to lean toward openness, at least as to a private entity's records *directly related* to its obligations under governmental contracts. Under most open records statutes, the government agency bears the burden of proving a record is exempt from disclosure. Similarly, courts have held that third-party contractors in possession of requested public records are placed in the shoes of a local agency for purposes of the burden of proof when the contractor performs a governmental function on behalf of the agency, and those records directly relate to the contractor's performance of that function. See *Allegheny Dept. of Admin. Servs. v. Parsons*, 61 A.3d 336, 342 (Pa. Commw. 2013) (contractor provided social services to county subject to right-to-know statutes in various respects). Although Pennsylvania's language is more specific, KORA has the requirement couched in negative terms—public records do not include records owned by a private entity and which are *not related* to functions funded by public funds. K.S.A. 2015 Supp. 45-217(g)(2). Pennsylvania courts have interpreted the right-to-know provision applies

14

only to information needed to evaluate the entity's performance on its government contract. 61 A.3d at 346.

GPKC has only one function—to operate the Hospital on behalf of the Board. As far as the record shows GPKC provides no services to any other entity, public or private. The Board cannot hide its records by delegating the operations to GPKC and violate its statutory duty to maintain adequate financial records pertaining to the operations of the County-created hospital. By assuming the role as the sole operator of the hospital on behalf of the Board, GPKC's operating records are deemed to be public records.

We find the Board is statutorily required to maintain the financial records of the Hospital and, as a result of the lease, GPKC is the custodian of the financial records and those records fall within the definition of public records. We remand for a factual determination of whether the requested documents are relevant to evaluating GPKC's performance of its contract terms.

Affirmed and remanded with directions.