IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,294

In the Matter of L.L., a Minor Child, by and Through Next Friends C.W.
and T.W., Grandparents,
*Appellants*,

and

D.L. and A.W., Natural Parents,
*Appellees*.

SYLLABUS BY THE COURT

1.

Standing is both a requirement for case-or-controversy and a component of subject matter jurisdiction that may be raised at any time. Standing can be lost.

2.

If a person does not have standing to challenge an action or to request a particular type of relief, then there is no justiciable case or controversy, and that person's suit must be dismissed.

3.

There is a two-prong standing test that applies when a statute provides the basis for asserting a right to seek a judicial remedy. Under this test, courts analyze standing as both a matter of statute and of common law; both prongs must be established.

4.

The Kansas Parentage Act authorizes any person *on behalf of the child* to bring an action to determine the existence of a father and child relationship. K.S.A. 2020 Supp.

1

23-2209(a). Any *interested party* may also bring an action to determine a mother and child relationship. K.S.A. 2020 Supp. 23-2220.

5.

The Kansas Parentage Act does not grant parties without a parent-child relationship the standing to request adoption of their co-parenting agreement.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 16, 2021. Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Opinion filed May 6, 2022. Judgment of the Court of Appeals dismissing the appeal is affirmed.

*Linus L. Baker,* of Stilwell, was on the brief for appellant.

No brief filed by appellees.

The opinion of the court was delivered by

WILSON, J.: C.W. and T.W. filed a "Petition for Determination of Paternity and Grandparent Rights" both as next friends of their granddaughter, L.L., and in their personal capacities. They named their daughter, A.W., who is L.L.'s mother, as a respondent in the lawsuit. D.L., who is listed on L.L.'s birth certificate as her father, is also a respondent.

This case presents a parentage issue intertwined with the enforceability of a purported "co-parenting agreement." Grandparents filed their petition along with an emergency motion for temporary order of custody. The district court granted a temporary order of custody—which eventually became the final order of the court—giving sole custody to Mother. But the district court refused to adopt as its order a contractual "co-parenting agreement" signed by Mother and Grandparents which provided—among other

2

things—that Grandparents would share "joint legal custody" over L.L. The district court found it had no legal authority to do so.

The sole issue on appeal is whether Grandparents may pursue—and if so, enforce—their claim that Mother has agreed to "[share] her rights and obligations as a parent with the [Grandparents]" such that "this co-parenting arrangement may not be terminated or otherwise revoked by either party" unless there is a judicial finding that Grandparents "are unfit co-parents." While Grandparents had standing to file the original petition, the current posture of the case leaves them without standing in their personal capacities. Their appeal is dismissed.

FACTS AND PROCEDURAL BACKGROUND

L.L. was born in 2011 to Mother. At the time of L.L.'s birth, Mother was not married to Father and the two parents eventually separated. Seven years later, Mother took L.L. to spend the holidays with Father at his home in Arizona. Father assured Mother that he would fly L.L. back to Kansas before school started in January. He did not. Instead, Father refused to return L.L. to Kansas and insisted on keeping her in Arizona.

Within days, Grandparents initiated this case as next friends of L.L. and in their personal capacities by filing a "Petition for Determination of Paternity and Grandparent Rights," asking the court to order:  (1) that L.L. is the natural daughter of Mother; (2) custody and the immediate return of L.L. to Kansas; (3) grandparent visitation; (4) legal and physical custody to Mother and Grandparents, with primary residence at Grandparents' home; (5) child support; and (6) "such other orders as the Court may deem just and necessary" and in L.L.'s best interests. At the same time, an "Emergency Motion for Temporary Order of Custody" was filed on behalf of all three named petitioners— with Mother's consent—seeking (1) a temporary order granting "sole physical and legal

3

custody" of L.L. to "petitioners" and Mother; (2) an order for the immediate return of L.L. to Kansas; and (3) such other relief as necessary in L.L.'s best interests.

Shortly thereafter, the district court found it had personal and subject matter jurisdiction of L.L., Grandparents, and Mother. The court also found that Mother was L.L.'s natural mother, that Grandparents were L.L.'s biological grandparents, and that Kansas was L.L.'s home state. The court entered temporary orders that Mother would have sole legal and physical custody of L.L. and that Mother could bring L.L. back to Kansas. The temporary order did not make any additional determination regarding visitation, child support, grandparent visitation, or medical care.

Though Father had previously in the proceedings appeared by phone, he failed to appear for the second hearing, during which the district court intended to address the temporary orders of custody. Grandparents appeared and asked the court to grant their motion to adopt a "co-parenting agreement" they had executed with Mother. The written agreement provided, among other things:

> "By this agreement the parties *shall have joint legal custody* of the Child with *residential custody* of the Child to be with the [Grandparents].

> "[Mother] is *sharing her rights* and obligations as a parent with the [Grandparents] and by this agreement [*Mother*] *is not abdicating her duties and responsibilities as a parent; she is sharing those rights, responsibilities, and duties with the* [*Grandparents*] *individually and jointly.*

> "[Grandparents] also believe the child can obtain health and educational benefits upon *an agreement with* [*Mother*] *to share her legal rights to custody and control of the child with the* [*Grandparents*].

4

"*The parties agree to cooperate with each other to enforce this agreement and particularly in regards to [Father] attempting to interject himself back into the life of the child against all parties' wishes.*

"[Mother and Grandparents] are of sound mind and under no undue restraint or duress. They have read the agreement and understand it as a free and voluntary act. The *parties agree that this co-parenting arrangement may not be terminated or otherwise revoked by either party unless the court in . . . 19CV296 or any other court with jurisdiction makes a judicial finding that the [Grandparents] are unfit co-parents.*" (Emphases added.)

After considerable relevant legal analysis, the district court found that the Constitution, law, and public policy did not allow the court to adopt the agreement and that joint legal custody is only between parents and not between a parent and grandparents. It also found that the agreement did not fit within grandparent visitation rights, as they are a creature of statute and are required to be strictly construed. But the court encouraged Grandparents to consider achieving their goal of ensuring they remain in L.L.'s life by pursuing their right to grandparent visitation as defined by statute.

After the court's order, Grandparents requested a factual finding that Mother explicitly waived her parental preference rights. At a hearing on that motion, all parties (including Father) participated. Father advised the court that he intended to pursue residential placement of L.L. to live with him in Arizona.

Ultimately, the district court found that Grandparents were asking it to allow only one of L.L.'s two known parents to irrevocably contract away or share legal custody with Grandparents without declaring them parents for the blatant and explicit purpose of forming a joint defense against Father's assertion of his fundamental constitutional custodial rights to L.L. The district court again found that it was without legal authority to adopt the agreement, that it violated the constitutional rights of Father, and that it was not in the best interests of L.L. to

5

adopt the agreement. The district court also declined to make any finding that Mother had waived her parental preference. It again brought up the grandparent visitation rights to which Grandparents might be entitled.

In response, Grandparents amended the petition to remove their request for grandparent visitation altogether. Grandparents also asked the district court to direct entry of a final judgment, which would allow them to immediately appeal its refusal to adopt the "co-parenting agreement." The district court again refused, finding that many of the issues most impactful for L.L. had yet to be finalized.

Months later, the court held a status conference. Father did not appear. Mother appeared pro se, and counsel for petitioners appeared. Mother advised the court that she and L.L. had moved to Iowa with the intent to reside there and not return to Kansas. At the end of the hearing, the court found it to be in the best interests of L.L. to finalize its temporary orders granting sole legal and residential custody to Mother.

Grandparents appealed all judgments of the district court "in order to appeal the denial of the enforcement of the contract called the co-parenting agreement," but the Court of Appeals panel found they did not have standing to seek the only relief they requested on appeal and dismissed the appeal for lack of jurisdiction. *In re L.L.*, No. 122,294, 2021 WL 1433234, at *7 (Kan. App. 2021) (unpublished opinion).

ANALYSIS

GRANDPARENTS DO NOT HAVE STANDING TO PURSUE THEIR CLAIM FOR SHARED LEGAL AND RESIDENTIAL CUSTODY OF L.L.

*1. Standard of review*

We first consider whether Grandparents have standing. While standing is a requirement for case-or-controversy, it is also a component of subject matter jurisdiction that may be raised at any time. The question of standing is one of law over which this court has unlimited review. *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014).

*2. Discussion*

The Kansas Constitution imposes a case-or-controversy requirement, part of which includes standing, or "a party's right to make a legal claim or seek judicial enforcement of a duty or a right." *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018) (citing *KNEA v. State*, 305 Kan. 739, 746, 387 P.3d 795 [2017]). Standing is one of the most amorphous concepts in the entire domain of public law, but if a person does not have standing to challenge an action or to request a particular type of relief, then "there is no justiciable case or controversy," and that person's suit must be dismissed. Otherwise, when a person who does not have standing to file suit asks for relief, it is akin to a request for an advisory opinion. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008).

Because the claims in this case appear to have changed over time, we articulate what Grandparents have specifically stated they *do not* claim in their petition for review to this court. First, they have dismissed their cause of action for grandparent visitation, as contemplated by K.S.A. 2020 Supp. 23-3301. Second, Grandparents do not claim to be

7

L.L.'s parents. Third, they do not claim to be co-parents with Mother, such that L.L. would potentially have four parents. Grandparents *do* claim to have irrevocable contractual rights to legal custody and residency of L.L., which they allege to share with Mother, and which they claim can be terminated *only* upon a court finding that they are "unfit co-parents."

There is a two-prong standing test that applies when a statute provides the basis for asserting a right to seek a judicial remedy. Under this test, courts analyze standing as both a matter of statute and of common law; both prongs must be established. *T.M.M.H.*, 307 Kan. at 908.

*3. Statutory standing*

This case was brought before the district court—and is still framed as such in the petition for review—as a "paternity action," which means it stems from the Kansas Parentage Act (KPA) (K.S.A. 2020 Supp. 23-2201 et seq.). It is through that lens that we now evaluate it. The KPA defines a "parent and child relationship" as "the legal relationship existing between a child and the child's biological or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations." K.S.A. 2020 Supp. 23-2205. The KPA further explains the parent and child relationship "includes the mother and child relationship and the father and child relationship." K.S.A. 2020 Supp. 23-2205. "The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." K.S.A. 2020 Supp. 23-2206.

A parent and child relationship may be established by a mother offering proof she gave birth to the child or under the Act. K.S.A. 2020 Supp. 23-2207(a); see K.S.A. 2020 Supp. 23-2220. A father may establish a parent and child relationship as provided by the Act or by signing a voluntary acknowledgment of paternity that is not revoked. K.S.A.

2020 Supp. 23-2207(b). Adoptive parents may establish a parent and child relationship by showing proof of adoption. K.S.A. 2020 Supp. 23-2207(c).

*a. Grandparents had standing to file the original petition.*

Grandparents first petitioned this court to find that they had standing to file their petition. The KPA authorizes any person *on behalf of the child* to bring an action to determine the existence of a father and child relationship. K.S.A. 2020 Supp. 23-2209(a). Any *interested party* may also bring an action to determine a mother and child relationship. K.S.A. 2020 Supp. 23-2220. Parentage actions may be joined with actions for divorce, annulment, separate maintenance, support, or adoption. K.S.A. 2020 Supp. 23-2210(a). Kansas law requires a mother, child, and each man presumed to be the father or alleged to be the father to be made parties. But failure to join one of the required parties does not deprive the court of personal jurisdiction. K.S.A. 2020 Supp. 23-2211. Grandparents argue that the panel erred because the plain text of the KPA gives them standing as "any person."

We turn to the statutory standing Grandparents claim to have. K.S.A. 2020 Supp. 23-2209 clearly states that a child *or any person on behalf of such child* may bring an action for determination of a father/child relationship under the KPA. Grandparents each qualify as "any person." "The phrase . . . *on behalf of* means 'in the name of, on the part of, as the agent or representative of.'" Black's Law Dictionary 189 (11th ed. 2019). This explains that while Grandparents may file a cause of action for paternity, the claim is not theirs. It is L.L.'s cause of action. Grandparents have status only in their representative capacity, and not in their personal capacities. This action, as contemplated by K.S.A. 2020 Supp. 23-2209, is simply the child's cause of action to determine the existence of a father and child relationship presumed under K.S.A. 2020 Supp. 23-2208. Though the text of the petition here does not specifically request a finding of paternity, it does assert

9

that Father is L.L.'s natural father and that he is listed on the birth certificate. Thus, the child's request for a finding of paternity can be inferred.

In their original petition, Grandparents also requested a finding that Mother is the biological mother of L.L. Under K.S.A. 2020 Supp. 23-2220 they needed to be an "interested party" to bring an action under the KPA to determine the existence of a mother and child relationship. To establish such "interest," which would qualify them to be "interested parties," Grandparents assert that they are Mother's parents and L.L.'s grandparents. Pursuant to K.S.A. 2020 Supp. 23-3301, and in conjunction with constitutional considerations, grandparents may be granted visitation if such is in L.L.'s best interests. *Skov v. Wicker*, 272 Kan. 240, 247-48, 32 P.3d 1122 (2001). To qualify for grandparent visitation with L.L., Grandparents must first establish that L.L.'s mother is Mother, and that they are Mother's parents. That would make them L.L.'s grandparents and would also give them an "interest" in establishing their status as grandparents through the mother/child relationship. Considering all the facts asserted in the petition, Grandparents qualified as "interested parties," such that they had standing to file a cause of action on behalf of L.L. to establish a mother and child relationship under the KPA. Grandparents also had standing in their personal capacities upon which to file the cause of action for grandparent visitation of L.L.

But standing can be lost. *Baker v. Hayden*, 313 Kan. 667, 682, 490 P.3d 1164 (2021). Our inquiry now focuses on whether Grandparents *continue* to have standing.

*b. Grandparents no longer have statutory standing.*

The only issue before us on review is Grandparent's challenge of the district court's refusal to adopt a "co-parenting agreement" between Mother and Grandparents that would allow Grandparents to "share" Mother's legal and physical custody of L.L. As the panel below astutely points out, Grandparents may have initiated several claims for

relief under the KPA, both for L.L. and for themselves, but the only remaining request for relief on appeal is far narrower.

Before we turn to that request on appeal, it is important to clarify exactly *who* appeals. The original action before the district court was brought by L.L., *through* her grandparents, but also by Grandparents in their personal capacities. Conversely, the petition for review has only been filed on behalf of Grandparents as individuals seeking the court's adoption of a document they executed in their personal capacities with Mother. Throughout the text, the petition for review uses "petitioners" and "Grandparents" interchangeably, which necessarily excludes L.L.—even though L.L. is one of the original petitioners, separate from Grandparents. Because the request for our review is just from Grandparents, and not from L.L., we evaluate the claims as only from Grandparents in their personal capacities and separately from their representative capacity on behalf of L.L.

We focus, then, on the only claim before us, which is to determine any rights Grandparents may have by virtue of an agreement which the district court found to be *not* in L.L.'s best interests. Aside from a direct conflict of interest this reveals between Grandparents and L.L., Grandparents have, via the "co-parenting agreement," vigorously pursued *only* their alleged parental rights—but somehow without being parents—to the exclusion of Father and *with* Mother as their contractual ally.

Grandparents allege there is "no statutory scheme" that provides the kind of parental rights they purport to have obtained via the "co-parenting agreement." Upon only the weight of this document, Grandparents assert that they have a legal claim to L.L. that must be recognized by the court. But this assertion misses the forest for the trees. Regardless of Grandparents' assertion, and irrespective of the title they attach to their document, the *content* of their document clearly addresses L.L.'s custody and residency. There *is* statutory framework which guides our courts on the custody, residency, and

11

parenting plan decisions they inevitably must make in cases such as these. See generally K.S.A. 2020 Supp. 23-2101 *et seq.* (Kansas Family Law Code); K.S.A. 2020 Supp. 23-2201 *et seq.* (Kansas Parentage Act); K.S.A. 2020 Supp. 23-3201 (custody, residency, and parenting plans). When a child's parents are not married, the KPA statutory framework most certainly applies. So, we now analyze whether the KPA recognizes such a claim on behalf of grandparents.

The KPA contemplates the district court's consideration of a parenting plan but only one as agreed upon or proposed by parents as parties to the action:

"If both parents are parties to the action, the court shall enter such orders regarding custody, residency and parenting time as the court considers to be in the best interest of the child.

"If the parties have an agreed parenting plan it shall be presumed the agreed parenting plan is in the best interest of the child. This presumption may be overcome and the court may make a different order if the court makes specific findings of fact stating why the agreed parenting plan is not in the best interest of the child. If the parties are not in agreement on a parenting plan, each party shall submit a proposed parenting plan to the court for consideration at such time before the final hearing as may be directed by the court." K.S.A. 2020 Supp. 23-2215(d).

Likewise, if we turn to the Kansas Family Law Code more broadly, the definition of "temporary parenting plan" and "permanent parenting plan" both indicate they are either court orders or agreements *between parents* regarding the custody, residency, and parenting time to be exercised *by parents*. See K.S.A. 2020 Supp. 23-3211.

These statutes clarify that any custody, residency, and parenting time proposal must be made by parents, either individually or collectively. These proposals are considered by the court when it makes orders for custody, residency, and parenting time.

If the proposal is made collectively by *both* parents, their joint proposal is called a plan which the court then presumes is in the child's best interests. Regardless, any proposal comes from the parents. Grandparents have clearly indicated they do not seek to be declared parents. Therefore, at most, the "co-parenting agreement" may present a proposal to the court from one parent—Mother—which carries no presumption of being in L.L.'s best interests.

While the Kansas Parentage Act may have given Grandparents statutory standing—either as "any person" on behalf of L.L. to determine a father-child relationship, or as an "interested party" to determine a mother-child relationship—it does not grant a party without (and not even claiming to have) a parent-child relationship the standing to request "adoption" of a "co-parenting agreement." In other words, Grandparents have failed to assert a claim they can pursue as individuals under the Kansas Parentage Act. Nothing in the KPA under these circumstances gives Grandparents, as opposed to L.L.'s parents, statutory standing to pursue a paternity action asking the court to adopt this "co-parenting agreement." They have no statutory standing for their issue on review to this court.

### c. Common law standing is moot.

As previously mentioned, a party must have both statutory and common law standing to pursue a cause of action under the KPA. *T.M.M.H.*, 307 Kan. at 908. In light of Grandparents' failure to establish statutory standing, it is unnecessary to determine whether Grandparents have common law standing.

CONCLUSION

Simply put, while Grandparents had standing to bring the original action to determine most of their initial claims on behalf of L.L. and themselves under the KPA, they lost that standing when the appeal narrowed down to their personal claim.

We acknowledge that the concurrence takes issue with the validity of the so-called "co-parenting agreement" as a matter of substantive law. Since we hold the appellants are procedurally barred from presenting their claims, we do not consider the substance of the document itself. We make no analysis and issue no holding regarding the substantive claims.

The judgment of the Court of Appeals dismissing the appeal is affirmed. Grandparents' appeal is dismissed.

\* \* \*

STEGALL, J., concurring:  I agree with the majority that the district court did not err by refusing to adopt as the court's order the so-called "co-parenting agreement" between Mother and Grandparents. But I do so as a matter of substantive law rather than as a question of standing.

My longstanding disagreements with this court's misguided interpretation of the Kansas Parentage Act (KPA) are well documented. See *In re M.F.*, 312 Kan. 322, 354, 475 P.3d 642 (2020) (Stegall, J., dissenting) ("[U]nder any accepted mode of statutory interpretation, the notion that the plain language of the Kansas Parentage Act means that a person not biologically related to a child can 'become' a biological parent is untenable."); *In re W.L.*, 312 Kan. 367, 385, 475 P.3d 338 (2020) (Stegall, J., dissenting)

(same); *In re Adoption of T.M.M.H.*, 307 Kan. 902, 926-27, 416 P.3d 999 (2018) (Stegall, J., concurring in result and dissenting) ("Ordinarily, we follow a well-defined and oft-stated analytical process for determining the meaning of statutes, beginning with the plain meaning of the words chosen by the Legislature. But *Frazier*'s holding—that the KPA means the opposite of what it plainly says—is not supported by anything resembling traditional statutory analysis. [Citations omitted.]").

In sum, in a series of decisions we have held that the parental preference may be "shared" by one parent with any other person through a contractual agreement referred to as a "co-parenting" agreement. *Frazier v. Goudschaal*, 296 Kan. 730, 753, 295 P.3d 542 (2013) ("If a parent has a constitutional right to make the decisions regarding the care, custody, and control of his or her children, free of government interference, then that parent should have the right to enter into a coparenting agreement to share custody with another without having the government interfere by nullifying that agreement, so long as it is in the best interests of the children."). When this happens, we have said that the other party to the co-parenting agreement is made a legal "parent" of the child and has established a valid "parent-child relationship" with the child. See *In re M.F.*, 312 Kan. at 323 ("We rule that [a same-sex] partner can be recognized as a legal parent through use of K.S.A. 2019 Supp. 23-2208[a][4] when the birth mother has consented to shared parenting at the time of the child's birth."); *Frazier*, 296 Kan. at 754 ("[W]ithout the coparenting agreement these children would have only one [legal] parent.").

This result is entirely unmoored from—and in fact blatantly contradicts—the plain language of the KPA. See K.S.A. 2020 Supp. 23-2205 (defining the "parent and child relationship" as "the legal relationship existing between a child and *the child's biological or adoptive parents* incident to which the law confers or imposes rights, privileges, duties and obligations" [emphasis added]).

15

I have made it clear that a proper interpretation of the KPA would never permit this result. *In re Adoption of T.M.M.H.*, 307 Kan. at 927, 930-31 (Stegall, J., concurring in result and dissenting) ("Under Kansas law, biology and adoption are the only two ways a parent-child relationship can be forged . . . . [A]doption is the only end-run around biology contemplated by the KPA."); *In re M.F.*, 312 Kan. at 354-55 (Stegall, J., dissenting) ("Contrary to this plain meaning, the majority fashions a statutory scheme under which a biological relationship can be conjured—*ex nihilo*—by the power of an incantation. The legal rule at work here is little more than 'saying it makes it so.' And that is no rule at all."). And on these grounds, I would affirm the district court here.

I note in passing that I question the majority's factual conclusion in this case that Grandparents "do not claim to be L.L.'s parents," because the contract at issue is repeatedly referred to as a "co-parenting agreement." *In re L.L.*, 315___ Kan. ___, ___, ___ P.3d ___ (2022), slip op. at 7-8. The agreement states Mother is "sharing her rights and obligations as a parent with" Grandparents. The agreement then refers to Grandparents as "co-parents."

In any event, today's majority continues to uphold a thoroughly debunked premise—that there remains a path under the KPA for individuals to establish a lawful parent-child relationship by contracting with a known parent. I imagine that as a result, in the future, people in Grandparents' situation (and the attorneys who represent them) will simply assert loudly and often that, yes, they are also legal parents of the child in question.

And until either the Legislature or this court fixes these mistakes, district courts across the state are indeed going to face the circus of children who (as today's majority puts it) "potentially have four parents." 315 Kan. at ___, slip op. at 8.

16