NOT DESIGNATED FOR PUBLICATION

No. 126,644

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW MOEDER,
*Appellant*,

v.

UNIFIED SCHOOL DISTRICT NO. 512, SHAWNEE MISSION, KS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Submitted without oral argument. Opinion filed June 28, 2024. Affirmed.

*Cody R. Smith*, of Graffman & Smith, LLC, of Kingman, for appellant.

*Gregory P. Goheen*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: The Wizard of Oz may have been hidden behind a curtain while controlling things in Oz, but then he was not in Kansas. In Kansas, the public policy is that public business must be done in public, not behind a curtain or a closed door. That policy was enshrined into law by the Legislature's enactment of the Kansas Open Meetings Act, K.S.A. 75-4317 et seq.

So when a Kansas school district established a committee of parents, teachers, and others to examine the pros and cons of modifying some school boundaries and then report their concerns, observations, and recommendations to the board of education for possible

action, the question arose whether this group's meetings had to be open to the public. The Superintendent of U.S.D. No. 512, Shawnee Mission schools said no. A school patron, Matthew Moeder, said yes.

Moeder sued the school district, asking the court to open those group meetings. He lost. Moeder appeals the district court's denial of his request for declaratory and injunctive relief against U.S.D. No. 512, Shawnee Mission. Moeder maintains that the school district was violating the Kansas Open Meetings Act.

*The appointment of a work group by a school district ignites a controversy.*

At the Board of Education meeting in April 2022, School Superintendent Dr. Michelle Hubbard announced that based on "'enrollment analysis,'" the school district—U.S.D. No. 512, Shawnee Mission—needed to start talking about a boundary change between Briarwood and Tomahawk Schools. She announced a plan to form a Briarwood and Tomahawk boundary work group. The boundary work group would engage in research and study and then make recommendations to the administration.

The boundary work group would "'review and study an enrollment analysis [prepared by RSP and Associates,] review and analyze the guiding principles of boundary changes, review and analyze public input, and make advisory recommendations on boundary changes.'" She acknowledged that boundary changes are very difficult and create a lot of stress for communities. She announced that the work group meetings would not be open to the public, stating the group really needs a protected space to analyze the data and have those tough conversations.

U.S.D. No. 512, Shawnee Mission is a governmental subdivision of the State of Kansas under Article 6, section 5 of the Kansas Constitution and K.S.A. 72-1131. The superintendent of the school district has "charge and control of the public schools of the

2

school district, subject to the orders, rules and regulations of the board of education." K.S.A. 72-1134(c). The superintendent is the school district's administrative leader and—under the board's direction—has general supervision of the schools. Making recommendations to the board about boundaries for schools within the districts is among the superintendent's official duties.

The appellant, Matthew Moeder, is a parent residing within the boundaries of U.S.D. No. 512, Shawnee Mission.

The work group consisted of 26 volunteers who were appointed by the superintendent. All but six were employed by the school district. The work group consisted of administrators, teachers, parents, and PTA presidents. The group held several meetings to deliberate and prepare recommendations. Moeder and other residents within the school district asked that the meetings be open to the public. None of the meetings were open to the public.

*Moeder sues to open the work group's meetings to the public.*

In November 2022, Moeder wrote to the school district requesting that the boundary work group meetings be open to the public in accordance with the Kansas Open Meetings Act, K.S.A. 75-4317 et seq. The school district responded that the boundary work group was not subject to the Act because it was merely an advisory board and had no decision-making authority. The final meeting of the boundary work group was held November 3, 2022. The boundary work group recommended the district adopt new boundaries for the two elementary schools.

A few days later, Moeder sued the district for declaratory and injunctive relief and an application for a temporary restraining order. He sought a declaration that the school district was in violation of the Act and a temporary restraining order and injunction

3

preventing the school district from taking binding action based on the recommendation from the work group and from further violating law. The district court declined to enter a temporary restraining order because no attorney for the board was available to respond.

Finally, at a meeting open to the public, the U.S.D. No. 512, Shawnee Mission approved the superintendent's recommendation to change the boundary for the Briarwood and Tomahawk elementary schools.

Moeder amended his petition and sought a declaration from the court finding the school district in violation of the Act for conducting the work group meetings out of public view. He also sought an injunction "to compel Defendant to rescind binding action taken on November 14, 2022." This would prevent the school district from implementing the new boundary until the school district conducted open meetings on the issue and would also prevent the school district from holding future work group meetings out of public view.

The district moved to dismiss, contending Moeder did not have standing to pursue relief, his petitions were moot or otherwise improper, and the work group meetings were not subject to the Act.

The district court dismissed the case after finding that under K.S.A. 75-4320(a), Moeder lacked standing to pursue injunctive relief to void a binding action taken by the Board. The court also ruled that his requested relief —asking the court to order all future work groups to hold open meetings—did not present an actual case or controversy, and the Briarwood and Tomahawk boundary work group was not subject to the Kansas Open Meetings Act.

Moeder raises two issues in his appeal. First, he argues that he has standing under K.S.A. 75-4320a(a) as a private individual to enforce the Kansas Open Meetings Act

4

using injunction, mandamus, declaratory judgment, or other appropriate orders. Second, Moeder contends the district court disregarded the facts alleged in his petition on his cognizable injury from the boundary change that will require his children to change schools and thus the court erred in dismissing the lawsuit. He contends the district court misinterpreted the 2001 amendment to K.S.A. 75-4318(a).

*We question whether Moeder has standing to sue.*

Basically, standing means a party must have a personal stake in the outcome. There are two types of standing:  traditional and statutory. *Baker v. Hayden*, 313 Kan. 667, 672-73, 490 P.3d 1164 (2021).

Kansas courts use a two-part traditional standing test. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 679-80, 359 P.3d 33 (2015). To demonstrate standing, a party "'must show a cognizable injury and establish a causal connection between the injury and the challenged conduct.'" *State v. Stoll*, 312 Kan. 726, 734, 480 P.3d 158 (2021).

To us, Moeder contends that he did not request the binding action taken by the Board to be voided; instead, he seeks to enjoin implementation of the action until the school district conducts open meetings on the issue. He maintains that he has standing under K.S.A. 75-4320a(a) as a private individual to enforce the Act by injunction, mandamus, declaratory judgment, or other appropriate order.

U.S.D. No. 512, Shawnee Mission contends the district court correctly found Moeder sought to void the action taken by the Board and that only the Kansas Attorney General or Johnson County District Attorney could seek such relief under K.S.A. 75-4320(a).

5

Standing is a part of the larger question of justiciability—the question whether the court can litigate a dispute. Standing is also a component of subject matter jurisdiction. It is a question of law over which this court has unlimited review. *In re L.L.*, 315 Kan. 386, 390, 508 P.3d 1278 (2022). When standing is determined on a motion to dismiss without an evidentiary hearing, the court must resolve factual disputes in the plaintiff's favor and the plaintiffs need only make a prima facie showing of jurisdiction. *KNEA v. State*, 305 Kan. 739, 747, 387 P.3d 795 (2017).

Moeder lacked statutory standing to pursue injunctive relief to void the Board action. Binding actions taken by a government body during a meeting in violation of the Act can, by law, be voided. But that remedy is available only to the attorney general and to county and district attorneys. Private individuals do not have standing to seek voidance of government action based on a violation of the Act. Private individuals have standing to seek injunctive and mandamus relief, i.e., prospective relief and declaratory relief but not to void the action. *Krider v. Board of Trustees of Coffeyville Community College*, 277 Kan. 244, 247-49, 83 P.3d 177 (2004); *Stoldt v. City of Toronto*, 234 Kan. 957, 962-63, 678 P.3d 153 (1984); compare K.S.A. 75-4320a(a) ("The district court of any county in which a meeting is held shall have jurisdiction to enforce the purposes of K.S.A. 75-4318 and 75-4319, and amendments thereto, with respect to such meeting, by injunction, mandamus, declaratory judgment or other appropriate order, *on application of any person*." [Emphasis added.]) with K.S.A. 75-4320(a) ("any binding action which is taken at a meeting not in substantial compliance with the provisions of the open meetings act shall be voidable *in any action brought by the attorney general or county or district attorney* in the district court of the county in which the meeting was held within 21 days of the meeting" [Emphasis added.]).

There are concerns about interference with public work in these cases. The *Stoldt* court explained it would unreasonably tie up government if every individual could seek to undo governmental acts:

6

"It is with good reason the legislature would so restrict the act. Voidance of governmental action, be it administrative or legislative, is a drastic remedy. The threat of it would be very unsettling. The restriction on the remedy provides governmental stability. A private person who feels aggrieved must first convince a prosecutor of the merits of his cause within ten days of the KOMA violation and get the prosecutor to seek voidance to undo the governmental acts. See K.S.A. 75-4320(a). It would be most difficult for government to function if every person was vested with the remedy of voiding governmental action for a violation of KOMA. Such actions, even though possibly ultimately unsuccessful, would unreasonably tie up government. We hold an individual who seeks to enforce KOMA through private litigation has only the remedies of mandamus and injunction, both of which have prospective application." 234 Kan. at 963.

Moeder's amended petition sought, among other relief, an injunction "to compel Defendant to rescind binding action taken on November 14, 2022." The district court correctly held Moeder lacked standing to seek such injunctive relief to void the action taken by the Board on November 14, 2022.

Moeder tries to circumvent the standing requirement by seeking only to enjoin implementation of the Board's November 14 action until the school district conducts open meetings on the boundary issue. We are not persuaded. His argument attempting to distinguish such relief is unconvincing and would thwart the legislative purpose for the standing requirement articulated in *Stoldt*. Injunctive relief by private individuals under KOMA is not available to enjoin the carrying out of binding decisions made at meetings already conducted. See *McDowell v. Board of Trustees, Independence Community College*, No. 67,851, 1992 WL 12944820, at *1 (Kan. App. 1992) (unpublished opinion). The statute permitting private individuals to seek injunctive relief speaks only of "enforc[ing] the purposes of" KOMA "with respect to such meeting." K.S.A. 75-4320a(a). In contrast, the statute pertaining to attorney general or county or district

7

attorney action speaks specifically about "binding action" taken in violation of KOMA. K.S.A. 75-4320(a).

Moeder's remedy was to convince a prosecutor of the merits of his claim within 21 days of the meeting and get the prosecutor to seek voidance of the action. See K.S.A. 75-4320(a). He is otherwise limited to prospective action. See *Stoldt*, 234 Kan. at 963.

*Did the district court err when it ruled that Moeder's requests were nonjusticiable?*

Moeder contends the district court disregarded the facts alleged in his petition on his cognizable injury from the boundary change that will require his children to change schools. He argues it is reasonable to infer the school district will continue to use work groups to discuss school district business in private in the future.

In response, U.S.D. No. 512, Shawnee Mission contends the district court correctly concluded Moeder's request for an injunction limiting possible future work groups was improper because it does not present an actual case or controversy and Moeder could not show a cognizable injury from any such future action.

The judicial power granted to the courts under Article 3, section 1 of the Kansas Constitution is the power to hear, consider, and determine controversies between rival litigants. Having an actual controversy is key; an abstract controversy does not meet the constitutional standard because courts do not give advisory opinions. *Baker*, 313 Kan. at 672; see also *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896-98, 179 P.3d 366 (2008). Actual cases and controversies are required for declaratory judgments. 285 Kan. at 897.

Under the Kansas case-or-controversy requirement—often called justiciability— courts require that (1) parties have standing; (2) issues not be moot; (3) issues be ripe,

8

having taken fixed and final shape rather than remaining nebulous and contingent; and (4) issues not present a political question. *Rivera v. Schwab*, 315 Kan. 877, 902, 512 P.3d 168 (2022), *cert. denied* 143 S. Ct. 1055 (2023). Whether a claim is justiciable is a question of law over which this court's review is unlimited. *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 666.

Moeder sought injunctive and declaratory relief to prevent the school district from holding future work group meetings out of public view.

Simply put, this claim does not present an actual case or controversy. Moeder cannot show a cognizable injury from any unknown future work group action. He makes only generalized, conclusory, and speculative allegations about possible future injury because of school districts use of work groups. The only concrete and particularized injury identified by Moeder is the use of the boundary work group. See *Baker*, 313 Kan. at 681. Whether any future work group violates the Act will depend on the facts of that case.

We agree with the district court that this claim is not justiciable.

*Did the Board intend to evade the Kansas Open Meetings Act?*

Moeder contends the boundary work group was closed to the public intentionally to avoid public scrutiny in violation of the Act, citing *Memorial Hospital Ass'n v. Knutson*, 239 Kan. 663, 671, 722 P.2d 1093 (1986). He states the Act contains no exception for really tough conversations. He also contends the district court misinterpreted the 2001 amendment to K.S.A. 75-4318(a).

U.S.D. No. 512, Shawnee Mission contends the district court correctly ruled the boundary work group was created by the Superintendent, was purely advisory, and had

no decision-making authority. Therefore, the boundary work group was not subject to the Act.

The district court dismissed this case on the pleadings. "Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review." *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). The appellate court will view the well-pled facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition demonstrate the plaintiff does not have a claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019); see K.S.A. 2023 Supp. 60-212(b)(6).

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The Act is remedial in nature and therefore subject to broad construction to carry out the Legislature's intent. *Knutson*, 239 Kan. at 669.

*We briefly review the evolution of the Kansas Open Meetings Act.*

Enacted in 1972, the Kansas Open Meetings Act begins by declaring that meetings for the conduct of government business be open to the public: "In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public." K.S.A. 75-4317(a). A meeting is "any gathering or assembly . . . by a majority of the membership of a public body or agency subject to this act for the purpose of discussing the business or affairs of the public body or agency." K.S.A. 75-4317a.

10

The term "meeting" includes gatherings "at all stages of the decision-making process." *Coggins v. Public Employee Relations Board*, 2 Kan. App. 2d 416, 423, 581 P.2d 817 (1978).

The open meeting policy applies to subdivisions of the state including boards and subordinate groups thereof:

> "Subject to the provisions of subsection (g), all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and *other subordinate groups thereof*, receiving or expending and supported in whole or in part by public funds shall be open to the public and no binding action by such public bodies or agencies shall be by secret ballot." (Emphasis added.) K.S.A. 75-4318(a).

In Kansas, the governing body of a unified school district is its duly elected board of education. Kan. Const. art. 6, § 5; K.S.A. 72-1131 et seq. The board of education sets boundaries for school attendance within the school district. See K.S.A. 72-3216(c). The superintendent of schools is an individual appointed by the board of education of each school district. See K.S.A. 72-1134(a). The superintendent "shall have charge and control of the public schools of the school district, subject to the orders, rules and regulations of the board of education." K.S.A. 72-1134(c).

In *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 534, 646 P.2d 1091 (1982), the Kansas Supreme Court declared: "Democracy is threatened when public decisions are made in private. Elected officials have no constitutional right to conduct governmental affairs behind closed doors. Their duty is to inform the electorate, not hide from it."

The *Palmgren* court rejected the argument that binding action was necessary for a meeting to come under the Act. The court addressed the meaning of "subordinate groups thereof," setting out a test to determine whether a public body was subject to the Act:

> "'First the group of people meeting together must be a "body or agency" within the meaning of the Act. Second, the group must have legislative or administrative powers or at least be legislative or administrative in its method of conduct. Third, the body must be part of a governmental entity at the state or local level, whether it is the governing body or some subordinate group. Fourth, it must receive or expend public funds or be a subordinate group of a body subject to the Act. Finally, it must be supported in whole or in part by public funds or be a subordinate group of a body which is so financed.'" 231 Kan. at 535.

As long as the parent body meets the public funding test, subordinate groups are covered by the Act regardless of the degree or existence of public funding. *Palmgren*, 231 Kan. at 535.

Two years later, the Attorney General Robert Stephan suggested that an advisory committee appointed by a school superintendent was a public body subject to the Act:

> "There is little doubt that the school district board is such a body; its functions are administrative and it is funded by the public. The office of superintendent, on the other hand, presents a more difficult problem. It has been observed that 'the Act has been applied only to groups of persons who exercise authority as a "body" and not to subordinate staff personnel who gather together but do not take collective action.' Smoot and Clothier, 20 W.L.J. at 250. A school superintendent does not, however, merely glean advice and recommendations from a committee for his own personal information and benefit. He may use such advice and recommendations to form an opinion which will eventually be carried into action. The superintendent together with his committee form a body and, according to Coggins, [2 Kan. App. 2d 416], the meetings leading to his final decision should thus be covered by the Act." Att'y Gen. Op. No. 1984-81.

When such a committee participates in the decision-making process by gathering information, evaluating options, and making recommendations to the governing body, it participates in the conduct of the affairs of the governing body and is covered by the scope of K.S.A. 75-4318(a). See Att'y Gen. Op. No. 1984-81.

Two years after that, the Kansas Supreme Court's interpretation of a subordinate group evolved. The court stated that entities "which are merely advisory and have no decision-making authority" are generally not subject to KOMA. *Knutson*, 239 Kan. at 671. But the court cautioned against using such entities to avoid public scrutiny:

> "Where it can be shown that a public body has intentionally, and for the purpose of avoiding the light of public scrutiny, appointed a board of non-elected citizens to determine for the elected board what course should be pursued, or where the actions of the private citizens are in any way binding upon the elected officials, the meetings of such groups should be open to public scrutiny. Public bodies cannot be allowed to do indirectly what the legislature has forbidden." *Knutson*, 239 Kan. at 671.

In 2001, the Legislature added to K.S.A. 75-4318(a): "Meetings of task forces, advisory committees or subcommittees of advisory committees created pursuant to a governor's executive order shall be open to the public in accordance with this act."

Before the 2001 amendment, a governor's task force created by executive order was not covered under K.S.A. 75-4318(a) because the office of governor is not statutorily created—it falls outside the definition of a state or administrative agency. The general provision of KOMA did not apply to the governor or any groups appointed by the governor. *Associated Press v. Sebelius*, 2003 WL 21652689, at *3-4 (Kan. 3d Jud. Dist. Ct. January 6, 2003).

In 2003, following the presumption that the Legislature does not enact meaningless legislation, this court made two observations concerning the 2001

13

amendment. First, task forces or advisory committees created by a governor did not previously fall under the Act as "'legislative and administrative bodies and agencies of the state . . . and other subordinate groups thereof.'" *Associated Press v. Sebelius*, 31 Kan. App. 2d 1107, 1121, 78 P.3d 486 (2003). Otherwise, the Legislature would not have needed to amend the statute for the Act to apply to such groups. Second, when the Legislature amended law to include meetings of task forces and advisory committees, it only included such committees created pursuant to a *governor's* executive order (not the incoming governor). *Sebelius*, 31 Kan. App. 2d at 1121.

In March 2020, responding to an open meetings complaint from the Shawnee Mission Post, an assistant attorney general said that the Shawnee Mission school district's digital learning task force was not a subordinate group subject to the Act. The opinion reasoned that the board of education did not create the task force. As in *Associated Press*, an individual—the superintendent—created the task force. The superintendent did not delegate any power or authority to the task force; appoint its members, supervise, lead, set the agenda for; or direct the contents of the group's report. The task force was composed of 26 volunteers that included students, parents, educators, business/industry, and administration. The task force had no authority to make any binding decisions. The task force informally submitted a report containing its recommendations to the superintendent and shared with district staff and the community via a webpage. The superintendent did not formally present the report to the board of education and did not make any recommendations based on the report. The board did not take any action in response to the task force report.

The assistant attorney general stated: "There is nothing to suggest that this task force was created to determine what course the board or the superintendent should pursue, or that its findings were intended to be binding on the board or the superintendent in any way." The task force was created by an individual, not a public body, and was merely advisory in nature and had no decision-making authority.

14

While the Attorney General can offer opinions about what may or may not be illegal, Kansas courts cannot.

*We make no advisory opinion here.*

The judicial power of Kansas courts is found in Article 3, section 1 of the Kansas Constitution as the "power to hear, consider and determine controversies between rival litigants." *State, ex rel. Brewster v. Mohler*, 98 Kan. 465, 471, 158 P. 408 (1916) ("Judicial power is the power to hear, consider, and determine controversies between rival litigants as to their personal or property rights, and must be regularly invoked at the instigation of one of the litigants."), *aff'd* 248 U.S. 112, 39 S. Ct. 32, 63 L. Ed. 153 (1918).

The case-or-controversy requirement manifested in the justiciability doctrine requires "(a) parties must have standing; (b) issues cannot be moot; (c) issues must be ripe, having taken fixed and final shape rather than remaining nebulous and contingent; and (d) issues cannot present a political question." *Sebelius*, 285 Kan. at 896. The doctrine of mootness is not a matter of jurisdiction but prudence. The doctrine has been described by our Supreme Court as arising out of court policy, which recognizes that the role of a court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.'" *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009) (quoting *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 [1996]).

"'A court policy necessarily comes about through prior opinions of the court, *i.e.*, the mootness doctrine developed through court precedent. Accordingly, our review is unlimited. See *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012) ("To the extent our decision involves . . . the interpretation and application of . . . court precedent, we are resolving questions of law and, thus, exercising unlimited review. *Johnson v. Brooks*

15

*Plumbing*, 281 Kan. 1212, 1213, 135 P.3d 1203 [2006].").' [*Duffy*,]295 Kan. at 849."
*State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439, 446 (2020)

To decide a case which is rendered moot would result in advisory opinions, which courts are constitutionally prohibited from issuing. See *Sebelius*, 285 Kan. at 897-98. Advisory opinions "suffer from abstraction of legal questions and inadequate factual context." 285 Kan. at 897 (quoting Note, *"Ghosts that Slay"*: *A Contemporary Look at State Advisory Opinions*, 37 Conn. L. Rev. 1155, 1180-81 [2005]). Such opinions are based upon abstract questions, which are "'inoperative and nugatory,' and are '"merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties. . . . Such is not the judicial power confided to this Court. "'" 285 Kan. at 897 (quoting *State ex rel. Hopkins v. Grove*, 109 Kan. 619, 622, 624, 201 P. 82 [1921]).

"The judicial power granted by Article 3 of the Kansas Constitution does not include the power to give advisory opinions. A Kansas court issuing an advisory opinion would violate the separation of powers doctrine by exceeding its constitutional authority." *Sebelius*, 285 Kan. at 898.

Our Supreme Court quoted the United States Supreme Court in a case where the Shawnee Mission School District Board of Education was a party. See *Butler v. Shawnee Mission School District Board of Education*, 314 Kan. 553, 576, 502 P.3d 89 (2022). The court held the case was not justiciable and adhered to the avoidance doctrine.

> "'All these considerations and perhaps others, transcending specific procedures, have united to form and sustain the policy. Its execution has involved a continuous choice between the obvious advantages it produces for the functioning of government in all its coordinate parts and the very real disadvantages, for the assurance of rights, which deferring decision very often entails. On the other hand it is not altogether speculative that a contrary policy, of accelerated decision, might do equal or greater harm for the security of private rights, without attaining any of the benefits of tolerance and harmony for the functioning of the various authorities in our scheme. For premature and relatively

16

abstract decision, which such a policy would be most likely to promote, have their part too in rendering rights uncertain and insecure.' *Rescue Army v. Municipal Court of City of Los Angeles*, 331 U.S. 549, 572, 67 S. Ct. 1409, 91 L. Ed. 1666 (1947)." *Butler*, 314 Kan. at 576.

All these authorities compel us to hold that we cannot offer an advisory opinion about whether the actions of the school district and the Superintendent of U.S.D. No. 512, Shawnee Mission schools violated the Act.

We affirm the district court's dismissal.